# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

LARRY SMITH,             )
                                   )
           *Petitioner*,         )         Case No. 3:23-cv-448
                                   )
v.                               )         Judge Atchley
                                   )
BRIAN ELLER,            )         Magistrate Judge McCook
                                   )
           *Respondent*.       )

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Larry Smith is a Tennessee inmate proceeding pro se on a federal habeas petition under 28 U.S.C. § 2254 in which he challenges the constitutionality of his confinement under Knox County judgments of conviction for one count of aggravated rape and two counts of aggravated kidnapping, for which he received an effective sentence of life without parole [Doc. 1]. Having considered the submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the Court will not hold an evidentiary hearing[1], the petition will be **DENIED**, and this action will be **DISMISSED**.

## I.     SUMMARY OF RELEVANT EVIDENCE & PROCEDURAL HISTORY

At age sixteen, the victim, S.J.,[2] moved to Knoxville with her boyfriend. *State v. Smith*, No. E2013-01162-CCA-R3-CD, 2014 WL 6612581, at *1 (Tenn. Crim. App. Nov. 24, 2014),

---

[1] "If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules"); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (providing an evidentiary hearing not required where record refutes the petitioner's allegations or otherwise precludes habeas relief).

[2] The Court refers to the victim by her initials for her privacy.

*perm. app. denied* (Tenn. Apr. 10, 2015) ("*Smith I*"). The couple's housing was unstable, but in October 2011, they lived in Christy Harris' apartment at Volunteer Studios. *Id.* On October 24, 2011, police arrested S.J.'s boyfriend at Volunteer Studios while S.J. was at the library. [Doc. 9-5 at 50–52]. When S.J. returned to Volunteer Studios, she was informed of the arrest by Harris, who was in Petitioner's apartment. [*Id.* at 51–52]. S.J. began to cry, and Petitioner allowed S.J. to wait inside his apartment while Harris found a phone for S.J. to use. *Smith I*, 2014 WL 6612581, at *1.

S.J. had been in Petitioner's apartment previously with other individuals, and Petitioner had given her no reason to be afraid of him up to that point. [Doc. 9-5 at 49]. So, Petitioner sat in a green plastic chair in the studio apartment while Petitioner made tea and rolled her a cigarette. [*Id.* at 53, 55]. Petitioner asked if S.J. was hungry, and she stated that she was not. [*Id.* at 55]. Petitioner then asked S.J. to trade places with him so that he could sit in the green chair at the table and eat. [*Id.* at 55]. S.J. sat on the edge of the bed. [*Id.*]. Petitioner then prepared some peas[3] and ate them. [*Id.* at 55]. Afterwards, Petitioner put on a movie and asked S.J. to "help him with something at the side of the bed." *Smith I*, 2014 WL 6612581, at *1. "As [S.J.] reached over to the edge," Petitioner secured one of S.J.'s wrists with a necktie and put his forearm on her neck so that she "could barely breathe[.]" *Id.* He pulled his pants down and took off S.J.'s leggings. *Id.* He warned S.J. that he would kill her if she did not submit. *Id.* Petitioner then digitally raped S.J., only stopping when someone knocked on his door. *Id.* at *1–2. S.J. used the distraction to untie and dress herself. *Id.* at *2. Petitioner initially blocked her exit from the apartment, but he eventually let her leave. [Doc. 9-5 at 23–24].

---

[3] S.J. testified that Petitioner ate a bowl of peas and onions [Doc. 9-5 at 55], while Petitioner testified that he did not recall having onion in his peas [Doc. 9-6 at 87].

S.J. went to the office of the apartment manager, Kathy Brown. [*Id.* at 24]. Kathy Brown called the police, and she, along with employee Scott Brown, waited with S.J. inside the office. [*Id.*]. S.J. was "crying hysterically[.]" *Smith I*, 2014 WL 6612581, at *2. While the three waited, Petitioner came to the office. *Id.* Scott Brown told Petitioner he should "wait for the police" and went outside with him. *Id.* Petitioner lit up a cigarette and remarked to Scott Brown that S.J. "wanted him to[.]" *Id.*

S.J. did not seek medical treatment, but she "had some difficulty swallowing and limped for a few days" after the assault. *Id.* She also "had vaginal discharge for a week." *Id.* On cross-examination, S.J. denied that she and Petitioner discussed selling Petitioner's prescription medication to raise money for herself and her boyfriend. *Id.* She stated "that she was crying about the arrest and did not think about anything else." *Id.*

After his arrest, Petitioner allowed the police to swab his hands for DNA, which he said would be found because he had touched S.J. *Id.* at *3. He also gave officers consent to search his apartment. *Id.* During that search, "many facts" corroborated the details S.J. provided about the attack. *Id.* During his police interview, Petitioner admitted that "[w]hatever [S.J.] says happened happened[,]" although he later said he was "being set up." *Id.* According to the detective, Petitioner "couldn't decide which version of events he wanted to go with." *Id.*

At trial, Petitioner denied raping S.J. *Id.* at *3–4. He testified that he merely comforting her because of her boyfriend's arrest, but that while doing so, he made some negative comments about S.J.'s boyfriend that angered her. *Id.* at *3–4. Petitioner stated S.J. asked him for $500 to help her and her boyfriend, and that he rejected S.J.'s proposal that they sell Petitioner's prescription painkillers to raise the money. *Id.* at 4. S.J. left the apartment, and Petitioner soon discovered that police were coming. *Id.* He went to the apartment office to wait "because he had

3

done nothing wrong." *Id.* He recalled smoking while outside waiting for the police but denied telling Scott Brown that S.J. "wanted it." *Id.*

During his direct examination, Petitioner testified as follows regarding his rejection of the proposal that he sell his prescription medication:

> And I said, no, no, no, no you're not going to get me like that. You're not going to get me like that. . . . But, no, I'm not giving you up my pills, no. I said, I can't afford no problems. The first felony, you know, will put me in jail. I'm not going to jail, no, thank you.

[Doc. 9-6 at 68]. Before cross-examination, the prosecution requested a hearing outside of the jury's presence to seek the trial court's permission to "impeach [Petitioner] regarding the existence of [his] prior felonies [in Georgia and Florida] but not the nature of the conduct." *Smith I*, 2014 WL 6612581, at *5. The prosecution argued that Petitioner "opened the door" to this impeachment with his "first felony" comment. *Id.* The defense tried to explain that Petitioner was "merely stat[ing] that he did not want to engage in felony activity." *Id.* But the trial court agreed with the prosecution and allowed it to examine Petitioner about his felonies. *Id.* This cross-examination occurred:

> Q: Well, you had an idea about how to get some money, didn't you? And, in fact, on your direct examination didn't you mention that [S.J.] was trying to lure you into this scheme selling prescription medication—
> A: See, you want to twist this.
> Q: —for money and you couldn't do that, right? You couldn't do that. I don't want to use the wrong words, because you said you weren't going to let that be done to you because that first felony would put me in jail. Right? You said that?
> A: Yes, I said that.
> Q: You're not going to get me like that.
> A: I mean—
> Q: You said, no, no you're not going to get me like that.
> A: Right. And when I said no, no you're not going to get me like that, you have to understand the first part was Christy had been trying to get me to sell my medication—
> Q: My question was did you say that or not on direct examination?
> A: Oh, yes, I did. I'm sure.
> Q: Okay. Well, the fact is you are a convicted felon?

4

A: Yes, I am.

Q: You have two felony convictions, correct?

A: Yes, but–

Q: One from Georgia and one from Florida?

A: Yes.

Q: So there's no question about dealing drugs and it being your first felony conviction, right?

A: I may have—my first felony conviction here in Knoxville put me away for life.

Q: Yes, sorry. Yeah, that's—excuse me, I'm sure it was just the location that you were talking about.

A: I didn't say Knoxville, I'm sure, but—

Q: But let me move on then . . .

[Doc. 9-7 at 14–15; *see also Smith I*, 2014 WL 6612581, at *8].

Ultimately, Petitioner was convicted as charged of one count of aggravated rape and two counts of aggravated kidnapping. *Smith I*, 2014 WL 6612581, at *4. The trial court sentenced Petitioner as a repeat violent offender to life without parole for aggravated rape, it merged the kidnapping convictions, and it sentenced Petitioner to a concurrent twelve-year-sentence for aggravated kidnapping. *Id.*

Petitioner appealed to the Tennessee Court of Criminal Appeals ("TCCA"), challenging the trial court's decision allowing the prosecution to introduce evidence of his prior felony convictions during trial and the manner that the trial court allowed this to occur. *Id.* at *5–9. The TCCA addressed the claims as matters of Tennessee law and affirmed the trial court's decisions. *Id.* The Tennessee Supreme Court denied Petitioner's application for discretionary review on April 10, 2015. [Doc. 9-16]. Petitioner did not petition for a writ of certiorari in the Supreme Court. [Doc. 1 at 3].

On December 1, 2015, Petitioner filed a post-conviction petition.[4] [Doc. 9-17 at 4–19]. The trial court appointed post-conviction counsel who filed an amended petition that, as relevant

---

[4] Petitioner signed his post-conviction petition on December 1, 2015. [Doc. 9-17 at 19]. Under Sixth Circuit precedent, the date a petitioner signs the document is typically deemed the date it is

here, "further flesh[ed] out [the] claim of ineffective assistance of counsel, asserting that trial counsel failed to adequately prepare him to testify." *Smith v. State*, No. E2021-01303-CCA-R3-PC, 2022 WL 3592684, at *1 (Tenn. Crim. App. Aug. 23, 2022), *perm. app. denied* (Tenn. Jan. 11, 2023) ("*Smith II*"). The trial court denied relief in a written order after hearing evidence on the post-conviction petitions. [Doc. 9-17 at 46–59].

Petitioner appealed to the TCCA, asserting that he had ineffective trial counsel for "failing to prepare him to avoid opening the door to the State's bringing in his prior convictions." *Smith II*, 2022 WL 3592684, at *3. The TCCA affirmed the trial court's denial of post-conviction relief. *Id.* at *4. On January 11, 2023, the Tennessee Supreme Court denied Petitioner's application for discretionary review. [Doc. 9-24].

On December 14, 2023,[5] Petitioner filed his federal habeas petition, raising the following three claims:

1. The trial court erred in allowing the State to introduce evidence of his prior felony convictions;

2. The trial court erred in the manner in which it allowed the State to present proof of his prior convictions; and

3. Trial counsel rendered ineffective assistance when he failed to properly prepare the petitioner to testify.

[*Id.* at 6, 9, 11]. The Court ordered Respondent to respond to the petition and submit the State-court record. [Doc. 8]. Respondent subsequently submitted the State-court record [Doc. 9] and an answer to the petition [Doc. 10], to which Petitioner replied [Doc. 14].

---

"filed" by handing it to the prison authorities for mailing. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008); *see also Huston v. Lack*, 487 U.S. 266, 273 (1988).

[5] This is the date Petitioner placed his federal petition in the prison mailing system. [Doc. 1 at 17]. *See Houston*, 487 U.S. at 273.

## II.    LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the state court applies the correct legal principle to the facts in an unreasonable manner. *Williams*, 529 U.S. at 407–08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Williams*, 529 U.S. at 410–11. Rather, this Court may grant relief for a claim decided on its merits in state court only where the petitioner demonstrates that the state court ruling "was so lacking in justification that there was an error understood and comprehended

7

in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Federal habeas review is also limited by the doctrine of procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available state remedies, and the state court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 729, 731–32, 735 n.1 (1991).

Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 302–03 (1984)). In Tennessee, presentation of the claim to the TCCA satisfies this requirement. Tenn. S. Ct. R. 39. But if a prisoner never presented a claim to the TCCA and a state procedural rule now bars presentation of the claim, because, for example, it is barred by Tennessee's one-year statute of limitation on post-conviction actions or its prohibition against second petitions, that claim is technically exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Coleman*, 501 U.S. at 731–32, 750; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and Tenn. Code Ann. § 40-30-102(c) ("one petition" rule).

In some circumstances, a procedural default may be circumvented to allow federal habeas review of a claim. But that is appropriate only where the prisoner can show cause for the default and actual resulting prejudice, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749–50; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). The exception for a fundamental miscarriage of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is "actually innocent of the underlying offense[.]" *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, a viable claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

With regard to the "cause and prejudice" exception for procedural default, the "prejudice" sufficient to overcome a default must be actual, with the petitioner bearing "the burden of showing, not merely that the errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). And "cause" for a default is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules. *See Coleman*, 501 U.S. at 753.

### III.   ANALYSIS

#### A.   Statute of Limitations

The instant petition for writ of habeas corpus is subject to the one-year statute of limitations of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The statute's limitation period provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The federal limitations period is tolled while a "properly filed application for State post-conviction or other collateral review" is pending. *See* 28 U.S.C. § 2244(d)(2). Here, § 2244(d)(1)(A) applies, because it is the latest and most relevant of the four subsections, and Petitioner does not plead anything that would invoke the others.

Petitioner's convictions became final on July 10, 2015, when the ninety-day period for petitioning the Supreme Court for certiorari expired. [Doc. 9-16]. *See* S. Ct. R. 13(1); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (holding "direct review" within meaning of § 2244(d)(1)(A)

includes review by the Supreme Court). The statute of limitations began running the next day, July 11, 2015,[6] and ran until December 1, 2015, when Petitioner mailed his pro se post-conviction petition to the trial court. [Doc. 9-17 at 19]. *See* 28 U.S.C. § 2244(d)(2); *Houston*, 487 U.S. at 270–72 (holding the filing date of prisoner's submission is the date it was handed over to prison authorities for mailing). Therefore, 144 days of the one-year statute of limitations had elapsed when Petitioner filed his post-conviction petition.

The federal limitations period remained tolled until the Tennessee Supreme Court denied Petitioner's post-conviction application for discretionary review on January 11, 2023. [Doc. 9-24]. 28 U.S.C. § 2244(d)(2). It began running the following day and expired 221 days later, on August 21, 2023 [January 12, 2023, plus 221 days equals August 21, 2023]. Therefore, the limitations period had expired when Petitioner placed his federal habeas petition in the prison mailing system on December 14, 2023. [Doc. 1-1].

Petitioner concedes that his petition is untimely but argues that this Court should equitably toll the limitations period because of his post-conviction counsel's failure to notify him that the Tennessee Supreme Court denied his Rule 11 application for discretionary review. [Doc. 1 at 15–17; Doc. 14 at 4–9]. Petitioner claims that his counsel "never responded to his many inquiries" about the Rule 11 application, and that since there is no set time for the Tennessee Supreme Court to render a decision on Rule 11 applications, "he waited for what he felt was a reasonable amount of time" before directly contacting the Tennessee Supreme Court. [Doc. 1 at 15–16]. Specifically, Petitioner maintains that in October or November 2023, he sent a letter to the Tennessee Supreme Court requesting information on his Rule 11 application, and that it was not until he received his

---

[6] *See* Fed. R. Civ. P. 6(a)(1)(A) (providing "[w]hen the period is stated in days. . . exclude the day of the event that triggers the period" in computing time).

case history from that court in November 2023 that he learned that the Rule 11 application had been denied months earlier. [*Id.*].  Attached to his petition is an inmate request form, purportedly signed by the prison's mailroom clerk, verifying that Petitioner did not receive any incoming legal mail from December 1, 2022, through November 20, 2023. [*Id.* at 23].

A petitioner is entitled to equitable tolling "if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted).  It is a doctrine that "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  But it is applied "sparingly." *Id.* at 784.  In fact, "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).  The party seeking equitable tolling bears the burden of demonstrating its applicability.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

Citing *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011), Petitioner claims that his attorney's failure to inform him of the Tennessee Supreme Court's decision entitles him to equitable tolling. [Doc. 14 at 5].  That case noted that "a substantial involuntary delay in learning about the status of [a petitioner's] appeal[]" may constitute extraordinary circumstances sufficient to warrant equitable tolling. *Robinson*, 424 F. App'x at 442 (citing *Miller v. Collins*, 305 F.3d 491, 495–96 (6th Cir. 2002)).  Petitioner also maintains that he was diligent in pursuing federal relief, as he filed his § 2254 petition promptly after learning of the Tennessee Supreme Court's decision [Doc. 14 at 6].  He further contends that, since there is no time limit placed on the Tennessee Supreme Court in ruling on a Rule 11 application, "waiting on the notification from the

court or his attorney was a rational response to the peculiarities of the court" [*Id.*, citing Tenn. R. App. P. 11].

Respondent argues that "Petitioner's self-serving allegation about his counsel is nothing more than 'a garden variety claim of excusable neglect.'" [Doc. 10 at 13, quoting *Holland*, 560 U.S. at 651]. He likens Petitioner's case to *Hunter v. Perry*, No. 1:18-cv-115, 2019 WL 591450 (E.D. Tenn. Feb. 13, 2019), where the court denied equitable tolling based on counsel's alleged failure to tell the petitioner about the denial of discretionary review until the petitioner allegedly wrote counsel a letter on an unknown date, because the petitioner was not diligent and did not establish an extraordinary circumstance that prevented timely filing. *Id.* at *3. And like the petitioner in *Hunter*, Respondent maintains, Petitioner has not provided any dates of when he allegedly mailed "his many inquiries" to counsel [Doc. 10 at 13, citing Doc. 1 at 15].

The Court agrees that Petitioner did not exercise reasonable diligence to warrant equitable tolling. In *Robinson*, the Sixth Circuit noted that "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'" *Robinson*, 424 F. App'x at 443 (quoting *Miller*, 305 F.3d at 496). And here, Petitioner did not "diligently monitor the progress of his appeal." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 463–64 (6th Cir. 2012) (citing *Winkfield v. Bagley*, 66 F. App'x 578, 583–84 (6th Cir. 2003)). In fact, Petitioner admits that, despite counsel's alleged failure to respond to his request for updates, Petitioner waited for over a year after he filed his Rule 11 application to "sen[d] a letter requesting information" on that application in October or November 2023 [Doc. 1 at 15–18]. Accordingly, even crediting Petitioner's claim that counsel failed to timely apprise him of the Tennessee Supreme Court's denial of discretionary review, Petitioner

13

has failed to demonstrate due diligence in protecting his federal rights.[7] Accordingly, Petitioner is not entitled to equitable tolling, and his petition is barred by the AEDPA's statute of limitations.

## B.    Merits of Claims

Notwithstanding the petition's untimeliness, the Court finds Petitioner procedurally defaulted his federal due process arguments in Grounds One and Two, and he can neither establish prejudice nor the applicability of the fundamental miscarriage of justice exception to excuse the default. And Ground Three fails because Petitioner has not shown how the TCCA's decision contradicted, or involved an unreasonable application of, clearly established Supreme Court law, or how it was based on an unreasonable determination of facts presented in State court. The Court explains below.

### 1.    Procedurally Defaulted Claims

In Ground One, Petitioner alleges that the trial court violated his federal due process protection under the Fifth and Fourteenth Amendments when it allowed "the State to introduce evidence of his prior felony convictions" after he "opened the door to cross-examination" [Doc. 1 at 6–8]. In Ground Two, he argues that the trial court violated his due process right under the Fifth and Fourteenth Amendments based on "the manner that the existence of prior felony convictions

_____

[7] Petitioner's failure to timely file his federal habeas petition is even more indefensible because his federal claims are the same claims he presented and exhausted in State court. *See Smith I*, 2014 WL 6612581, at *5–8; *Smith II*, 2022 WL 3592684, at *3–4; *compare Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011) (affirming the denial of equitable tolling where the petition "did little more than reassert grounds asserted in pleadings previously filed on [his] behalf in the state post-conviction proceedings") (internal quotation marks and citation omitted). Accordingly, Petitioner could have filed a protective federal habeas petition and moved for a stay pending the result of the Tennessee Supreme Court's decision. *See, e.g., Gonzalez v. Thaler*, 565 U.S. 134, 153–54 (2012) (holding petitioner facing a lengthy delay in issuance of mandate could file protective federal petition and seek a stay); *Pace v. DiGuglielmo*, 544 U.S. 408, 416–17 (2005).

14

were put before the jury and the fact that two convictions were inquired into in the examination of Petitioner" [*Id.* at 9–11].

Petitioner raised these claims on direct appeal, but he raised them as errors based on State law [Doc. 9-11 at 14–17, 18–22]. When determining whether a petitioner fairly presented a federal constitutional claim in State court, the Sixth Circuit has examined the petitioner's:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005)). "[G]eneral allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Id.* (internal quotations omitted).

When presenting Ground One in State court, Petitioner twice cited *State v. Riels*, 216 S.W.3d 737 (Tenn. 2007),[8] a Tennessee Supreme Court case that discussed the constitutional right against self-incrimination [Doc. 9-11 p. 16–17]. But Petitioner made no argument concerning federal due process in State court, and he made no citations to federal law [*Id.*]. In fact, the words "due process" do not appear in his State-court brief [*Id.*]. Therefore, Petitioner did not fairly present the State court with the federal due process claim presented in Ground One.

---

[8] In *Riels*, the defendant's statements amounted to "an attempt to express his remorse." 216 S.W.3d at 746. The Tennessee Supreme Court concluded "that the trial court erred in holding Riels' statements opened the door for full-cross-examination on the details of the murders. Riels was thus denied his right against self-incrimination, in violation of the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution." *Id.*

Likewise, Petitioner did not fairly present Ground Two in State court. On direct appeal, Petitioner argued that the State was allowed to put in more evidence than was necessary to establish Petitioner had a prior felony, and that the trial court erred in failing to allow the parties the opportunity to stipulate to the prior felony's existence. [Doc. 9-11 at 18–22]. To support this argument in State court, Petitioner relied upon Tennessee Rules of Evidence, State-court case law, and one federal case, *Old Chief v. United States*, 519 U.S. 172 (1997), which discussed the admissibility of evidence under the Federal Rules of Evidence. [*Id.*]. However, his argument did not raise, and the TCCA did not perceive or address, a federal due process claim. *Smith I*, 2014 WL 6612581, at *7–9.[9] Therefore, Petitioner's federal due process claim in Ground Two was not fairly presented in State court.

Petitioner may not now properly exhaust his federal claims, as he waived their review by passing the first court of competent jurisdiction that could have addressed the claims—i.e., the TCCA on direct appeal. Tenn. Code Ann. § 40-30-106(g). And because Petitioner no longer "has the right under the law" of Tennessee to properly exhaust these claims, they are technically exhausted but procedurally defaulted. *See* 28 U.S.C. § 2254(c); *Atkins*, 792 F.3d at 657; *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Therefore, the Court may review the merits of Petitioner's claims only if he establishes cause and prejudice to excuse the default, or that a fundamental miscarriage of justice would result if the Court did not consider it. Petitioner does not argue, much less establish, these exceptions [*See, e.g.*, Doc. 14 at 9–11]. The Court otherwise notes that the fundamental-miscarriage-of-justice

---

[9] The Sixth Circuit has noted that *Old Chief* did not address the admissibility of prior acts testimony "in constitutional terms." *Bugh v. Mitchell*, 329 F.3d 496, 513 (6th Cir. 2003).

exception is inapplicable, as Petitioner has not presented new evidence of his factual innocence, and the State established Petitioner's guilt beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327 (requiring party asserting this exception to show "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . in light of the new evidence); *Smith I*, 2014 WL 6612581 at *1–4.

To establish prejudice sufficient to excuse a procedural default, a petitioner must show that the error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. "[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *Rust v. Zent*, 17 F.3d 155, 161–62 (6th Cir. 1994)).

The TCCA concluded that both of Petitioner's arguments on direct appeal lacked merit. As to Ground One, the TCCA affirmed the trial court's decision to admit evidence of Petitioner's prior felony convictions pursuant to State law. *Smith I*, 2014 WL 6612581, at 5–7. In doing so, the TCCA agreed with the trial court that Petitioner "placed his prior criminal record in controversy and increased the probative value of his felony convictions" when he testified "that he could not afford any problems because the first felony would put him in jail." *Id.* at *7. And although the jury learned that Petitioner was a felon, any prejudicial effect was limited because the neither the State nor Petitioner "address[ed] the nature of the offenses." *Id.* (citing Tenn. R. Evid. 403). Further, Petitioner has failed to show that the introduction of the fact that he had two prior felonies swayed the result of the trial, as there was strong evidence of his guilt absent this evidence. *See Smith I*, 2014 WL 6612581, at *1–3. Accordingly, Petitioner has failed to demonstrate prejudice to excuse the default in Ground One.

17

Neither can Petitioner establish prejudice as to Ground Two. The TCCA affirmed the trial court's decision regarding how the prosecution could impeach Petitioner with his prior felony convictions. *Smith I*, 2014 WL 6612581, at *9. Specifically, the State court observed that the "manner in which [Petitioner's] prior convictions were presented to the jury was not unduly prejudicial." *Id.* Notably, the TCCA concluded its review of the claim by deciding "based on the entire record, [Petitioner] has failed to show that any error on the part of the trial court in admitting his prior convictions more probably than not affected the outcome of the trial." *Smith I*, 2014 WL 6612581, at *9 (internal quotations omitted). Therefore, given the "strong evidence" of Petitioner's guilt and "lack of evidence to support his claim[,]" Petitioner cannot demonstrate the requisite prejudice to excuse his default of Ground Two. *Perkins*, 58 F.3d at 219.

### 2. Claim Addressed on Merits

In Ground Three, Petitioner alleges a properly exhausted claim of ineffective assistance of trial counsel based on counsel's alleged failure to prepare Petitioner to testify at trial,[10] which "allow[ed] the Petitioner's previous felonies to be introduced to impeach his trial testimony."[11] [Doc. 1 at 11–13]. The standard set forth in *Strickland v. Washington* governs this claim. Under *Strickland*, a petitioner must satisfy a conjunctive, two-pronged test to establish the constitutionally ineffective assistance of counsel: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such

---

[10] Petitioner states this claim against Mr. Kirk, his post-conviction counsel. [Doc. 1 at 11–13; Doc. 9-19 at 1], but Mr. Harper was Petitioner's attorney at trial [Doc. 9-5 at 1].

[11] Petitioner also alleges that trial counsel "failed to explain the advantages and disadvantages, as well [sic] the pitfalls, he might face when testifying at trial" [Doc. 1 at 12]. But this conclusory claim is procedurally defaulted, as Petitioner's failure to exhaust it to the TCCA during his post-conviction appeal would now render it waived from further State-court review. [Doc. 9-19]. Tenn. Code Ann. § 40-30-106(g); 28 U.S.C. § 2254(c); *Coleman*, 501 U.S. at 732. Nevertheless, it has no merit because it is a conclusory allegation lacking evidentiary support. *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).

ineffective assistance. 466 U.S. at 687. A petitioner establishes deficiency when he can demonstrate that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687–88. But a reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id*. at 687, 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id*. at 691.

The TCCA affirmed denial of post-conviction relief based on *Strickland*'s prejudice prong, holding that "even if counsel performed deficiently in preparing the petitioner for his trial testimony, [] the exclusion of the petitioner's prior convictions would not have changed the outcome of the trial . . . and, consequently, the petitioner cannot show that he was prejudiced by counsel's actions." *Smith II*, 2022 WL 3592684, at *4.

Petitioner's conclusory allegations to the contrary provide no basis for federal habeas relief. *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012). The evidence the TCCA relied upon to find that the introduction of Petitioner's status as a felon did not sway the trial considering the evidence of his guilt, which included S.J.'s recollection of the kidnapping and rape, two witnesses' recollections of the immediate aftermath of the incident, Petitioner's confession that "[w]hatever

19

[S.J.] sa[id] happened happened[,]" and his statement that "[h]er DNA will be on [his] hands because [he had] touched her." *Smith I*, 2014 WL 6612581, at *3. And police corroborated the details of S.J.'s allegations based on what they discovered in Petitioner's apartment after he consented to the search. *Id.* Based on this evidence, there was no reasonable probability of a different trial outcome even if counsel was deficient in preparing Petitioner for giving testimony. Therefore, the decision rejecting Petitioner's claim neither contradicts, nor involves an unreasonable application of, *Strickland*'s prejudice prong.

Finally, Petitioner does not contest the State court's factual determination upon which it based its decision. His cursory allegation of prejudice addresses none of the evidence against him, even assuming evidence of his prior felonies was not introduced [Doc. 1 at 11–13]. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And to obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Applying this standard, the Court concludes that a COA should be denied in this case.

20

**V.     CONCLUSION**

For the reasons set forth above, Petitioner has failed to demonstrate an entitlement to federal habeas relief.   Therefore, the instant petition will be **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.   A certificate of appealability from this decision will be **DENIED**.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**